IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| *ex rel.* MARK TROXLER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case. No. 11-CV-808-TCK-FHM |
| | ) | |
| WARREN CLINIC, INC., and | ) | |
| SAINT FRANCIS HEALTH SYSTEM, | ) | |
| INC., | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION AND ORDER

Before the Court is the Motion to Dismiss filed by Defendants Warren Clinic, Inc. and Saint Francis Health System, Inc. (Doc. 24), wherein Defendants move the Court to dismiss this action with prejudice pursuant to Federal Rules of Civil Procedure 12(b)(6) and 9(b). For the reasons explained below, Defendants' motion is granted.

**I.    Factual Background**

Mark Troxler ("Relator") filed this qui tam action on behalf of the United States of America pursuant to the False Claims Act ("FCA"), 31 U.S.C. § 3729, et seq.[1] Relator alleges the following facts in his Complaint. Defendant Warren Clinic, Inc. ("Warren Clinic") is a physician group practice with more than forty locations in Tulsa and northeast Oklahoma. Warren Clinic is affiliated with Defendant Saint Francis Health System ("Saint Francis"), a not-for-profit healthcare

---

[1] The FCA authorizes private citizens to assert FCA claims on behalf of the United States. 31 U.S.C. § 3730(b). These actions are known as qui tam actions, with the private citizen or "relator" acting "for the person and for the U.S. government against the alleged false claimaint." *United States ex rel. Sikkenga v. Regence Bluecross Blueshield of Utah*, 472 F.3d 702, 706 n.3 (10th Cir. 2006) (internal quotation marks omitted). A relator in a qui tam action receives a certain percentage of any amount recovered by the United States, depending on the circumstances of each case. *See* 31 U.S.C. § 3730(d).

corporation. Relator is a physician who was employed by Warren Clinic from March 2010 to February 2011. While employed by Warren Clinic, Relator alleges he discovered that Defendants "caused and allowed unqualified personnel to obtain and record patients' History of Present Illness ("HPI") during office visits. Defendants have fraudulently billed Medicare and Medicaid for the work of obtaining and documenting HPI as if it were performed by physicians when, in fact, it was not." (Compl. 1.) Based on these facts, Relator asserts two causes of action: (1) presentation of false claims to the government, in violation of 31 U.S.C. § 3729(a)(1)(A); and (2) making or using a false record or statement to get a false claim paid or approved by the government, in violation of 31 U.S.C. § 3729(a)(1)(B).

On February 26, 2013, the United States notified the Court that it would not intervene in the action. *See* 31 U.S.C. § 3730(b)(2) (providing that United States must be given opportunity to intervene before relators may serve complaint on defendant). On April 12, 2013, Defendants filed their motion to dismiss.[2] The Court has delayed entering a scheduling order pending the outcome of the motion to dismiss.

**II.     Standards of Review**

Defendants argue that Relator's claims are subject to dismissal pursuant to Rule 12(b)(6) and Rule 9(b) of the Federal Rules of Civil Procedure because: (1) the allegations fail to state a claim for an FCA violation; and (2) the allegations are not pled with the requisite particularity.

---

[2] On January 9, 2014, Judge Dowdell recused and this case was reassigned to the undersigned judge.

A.  Rule 12(b)(6)

In considering a motion to dismiss under Rule 12(b)(6), a court must determine whether the plaintiff has stated a claim upon which relief may be granted. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[T]he mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims." *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (emphasis in original).

The Tenth Circuit has interpreted "plausibility," the term used by the Supreme Court in *Twombly*, to "refer to the scope of the allegations in a complaint" rather than to mean "likely to be true." *Robbins v. Okla. ex rel. Okla. Dep't of Human Servs.*, 519 F.3d 1242, 1247 (10th Cir. 2008). Thus, "if [allegations] are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs have not nudged their claims across the line from conceivable to plausible." *Id.* (internal quotations omitted). "The allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief." *Id.* "This requirement of plausibility serves not only to weed out claims that do not (in the absence of additional allegations) have a reasonable prospect of success, but also to inform the defendants of the actual grounds of the claim against them." *Id.* at 1248.

**III.    Overview of FCA**

As a general matter, "[t]he FCA covers all fraudulent attempts to cause the government to pay out sums of money." *United States ex rel. Conner v. Salina Reg'l Health Ctr.*, 543 F.3d 1211, 1217 (10th Cir. 2008) (internal quotation omitted). Relevant to this case, the FCA prohibits:

> (1) knowingly present[ing], or caus[ing] to be presented, to an officer or employee of the United States Government or a member of the Armed Forces of the United States a *false or fraudulent claim* for payment or approval;
> (2) knowingly mak[ing], us[ing], or caus[ing] to be made or used, *a false record or statement to get a false or fraudulent claim paid* or approved by the Government;

31 U.S.C. § 3729(a)(1),(2) (emphasis added).

    A.    Elements

Section 3729(a)(1) prohibits the presentation of false or fraudulent claims to the government for payment. In order to establish a violation of § 3729(a)(1), "a plaintiff must show by a preponderance of the evidence that: (1) a false or fraudulent claim (2) is presented to the United States for payment or approval (3) with knowledge that the claim is false or fraudulent." *United States ex rel. Trim v. McKean*, 31 F. Supp. 2d 1308, 1315 (W.D. Okla. 1998). The "gravamen of a false claim focuses on the conduct of the defendant, and inquires into the defendant's purpose and intention in filing the requests for payment or reimbursement." *Id.*

Section 3729(a)(2) prohibits the making or using of false records or statements in attempt to get a false claim paid by the government. *See Allison Engine Co., Inc. v. United States*, 553 U.S. 662, 671 (2008) ("What § 3729(a)(2) demands is . . . that the defendant made a false record or statement for the purpose of getting a false or fraudulent claim paid or approved by the Government.") (internal quotation omitted); *Shaw v. AAA Eng'g & Drafting, Inc.*, 213 F.3d 519, 531 (10th Cir. 2000) ("Under § 3729(a)(2), liability is premised on the presentation of a false record or

4

statement to get a false or fraudulent claim paid or approved. Section 3729(a)(1), however, requires only the presentation of a false or fraudulent claim for payment or approval without the additional element of a false record or statement.") (internal quotations omitted). A relator may establish a violation of § 3729(a)(2) by showing: "(1) a false record or statement (2) is used to cause the United States to pay or approve a fraudulent claim (3) with the defendant's knowledge of the falsity of the record or statement." *Trim*, 31 F. Supp. 2d at 1315.

The "knowledge" or "scienter" requirement, which is an essential element of both types of violations alleged in this case, is defined by statute. "Knowing" and "knowingly" mean "that a person, with respect to information, (1) has actual knowledge of the information; (2) acts in deliberate ignorance of the truth or falsity of the information; or (3) acts in reckless disregard of the truth or falsity of the information, and no proof of specific intent to defraud is required." 31 U.S.C. § 3729(b). Due to this scienter requirement, it is settled law that "[a] mere violation of a regulatory provision, in the absence of a knowingly false or misleading representation, does not amount to fraud." *Trim*, 31 F. Supp. 2d at 1315. "For a statement to be knowingly false, it must be more than merely an innocent mistake or misinterpretation of a regulatory requirement." *Id.*; *see also Hagood v. Sonoma Cnty. Water Agency*, 929 F.2d 1416, 1421 (9th Cir. 1991) (explaining that "[i]nnocent mistake" and "negligence" do not satisfy the FCA's knowledge element and that "[t]o take advantage of a disputed legal question . . . is to be neither deliberately ignorant nor recklessly disregardful").

B.  Types of Claims

The FCA "recognizes two types of actionable claims – factually false claims and legally false claims." *Conner*, 543 F.3d at 1217. In a factually false case, "proving falsehood is relatively

straightforward: A relator must generally show that the payee has submitted an incorrect description of goods or services provided or a request for reimbursement for goods or services never provided." *Id.* (internal quotation omitted). A relator may also base a claim on a legal falsehood. Known as "false certification claims," these claims require the relator to prove that "the defendant has certified compliance with a statute or regulation as a condition to government payment, yet knowingly failed to comply with such statute or regulation." *Id.* (internal quotation and alteration omitted).[3]

False certification claims fall into two categories: express false certification and implied false certification. *Id.* "An express false certification theory applies when a [defendant] falsely certifies compliance with a particular statute, regulation or contractual term, where compliance is a

---

[3] A secondary source provides additional explanation regarding the difference between factual and legal falsity and explains that, in the health care area, the two types of falsity often overlap:

> "Falsity" has at least two dimensions under the FCA. First, a claim may be false because it seeks reimbursement for services or goods not provided or for services or goods provided in a manner different from that described in the claim form. Second, a claim may be false in light of relevant law or contract terms. *In the health care area, these two sources of falsity sometimes merge, usually with dire consequences for defendants.* The first type of "falsity" is fairly characterized as factual falsity, viz, the claim either incorrectly describes the services or goods provided or seeks reimbursement for goods or services not provided. In these cases, the claim may be considered to be intrinsically false. . . . The second type of "falsity" may be characterized as "legal" falsity, viz, the claim is not factually false (i.e., not false on is face), but it is false for an extrinsic legal, regulatory or contractual reason.

Robert Fabrikant, Glenn E. Solomon, *Application of the Federal False Claims Act to Regulatory Compliance Issues in the Health Care Industry*, 51 Ala. L. Rev. 105, 111 -112 (1999) (footnotes omitted) (emphasis added); *see also In re Cardiac Devices Qui Tam Litig.*, 221 F.R.D. 318, 345 (D. Conn. 2004) (government alleged that defendants' failure to disclose that cardiac devices for which it sought payment were investigational devices and not approved for marketing by FDA resulted in factually and legally false claims).

prerequisite to payment." *Id.* (internal quotation omitted). "This promise may be any false statement that relates to a claim, whether made through certifications on invoices or any other express means." *Id.* "Under an implied certification theory, a facially truthful claim can be construed as false if the claimant violates its continuing duty to comply with the regulations on which payment is conditioned." *United States ex rel. Hobbs v. Medquest Assocs., Inc.*, 711 F. 3d 707, 714 (6th Cir. 2013) (internal quotation marks omitted). "[C]ourts do not look to the contractor's actual statements; rather, the analysis focuses on the underlying contracts, statutes, or regulations themselves to ascertain whether they make compliance a prerequisite to the government's payment." *Conner*, 543 F.3d at 1217. To succeed, a false certification theory must be based upon a condition of payment, not a condition of participation. *Hobbs*, 711 F.3d at 714. "Condition of payment" refers to a condition "which, if the government knew [was] not being followed, might cause it to actually refuse payment." *Conner*, 543 F.3d at 1220. "By contrast, mere conditions of participation in a program, as well as a claimant's certifications that it has complied with the program's conditions, 'are enforced through administrative mechanisms.'" *United States ex rel. New Mexico v. Deming Hosp. Corp.*, 992 F. Supp. 2d 1137, 1147 (D.N.M. 2013) (quoting *Conner*, 543 F. 3d at 1220).

In cases involving a false certification theory (whether express or implied), the claim is "actionable only if it leads the government to make a payment which it would not otherwise have made" and the false statement was "material to the government's decision to pay." *Conner*, 543 F.3d at 1219. This is known as a "materiality" requirement. *Id.* The Tenth Circuit explicitly adopted a materiality requirement in the context of false certification claims but declined to "address whether materiality is an element of . . . other theories of FCA liability." *Id.* at 1220 n.6. Therefore, in

7

addition to the elements set forth above for each relevant type of FCA violation, the Tenth Circuit has added a materiality requirement for all FCA claims based on a theory of false certification but has not taken a position as to whether materiality is a requirement in a more garden-variety factual falsity case.[4]

## IV. Analysis of Relator's Complaint[5]

### A. Rule 12(b)(6) - Failure to State a Claim

Relator alleges Defendants violated the FCA by allowing unqualified personnel to obtain and record patients' History of Present Illness ("HPI") during office visits. Relator's Complaint does not indicate whether he proceeds on a theory of factual falsity, legal false certification, or both. Therefore, the Court has analyzed Relator's allegations under both theories.

---

[4] The majority position appears to be that materiality is a requirement in every FCA case. *See United States v. Southland Mgmt. Corp.*, 326 F.3d 668, 679 (5th Cir. 2003) (en banc) (Jones, J., concurring) ("There should no longer be any doubt that materiality is an element of a civil False Claims Act case. Our past precedent and every circuit that has addressed the issue have so concluded."); *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 785 (4th Cir. 1999) ("Liability under the False Claims Act is subject to the further, judicially imposed requirement that the false statement or claim be material."); *United States ex rel. Oliver v. The Parsons Corp.*, 498 F. Supp. 2d 1260, 1288-89 (C.D. Cal. 2006) (collecting cases). However, where the allegation is a factually false claim, any "materiality" requirement would seem to be easily met in that the government paid a claim in a factually wrong amount, paid for a service that was not actually provided, or paid an amount greater than it should have based on the service actually provided. *See Conner*, 543 F.3d at 1223 ("[W]here the validity of actual costs is at issue, there can be little question that had the government known of the alleged fraud, it would not have made the payments.").

[5] In another FCA case, this Court separately analyzed each paragraph of the relator's complaint to determine if it stated a claim for relief. However, such approach is only required where the "'paragraphs of a relator's complaint allege separate and unrelated fraudulent conduct.'" *United States ex rel. Sharp v. E. Okla. Orthopedic Ctr.*, No. 05-CV-572-TCK-TLW, 2009 WL 499375, at *7 (N.D. Okla. Feb. 27, 2009) (quoting *United States ex rel. Bledsoe v. Cmty. Health Sys.*, 501 F.3d 493, 509 (6th Cir. 2007)). Here, Relator's Complaint alleges a single type of fraudulent conduct.

## 1. Factual Falsity

Seven components are considered in selecting the appropriate code for an evaluation and management ("E/M") service: history, examination, and medical decision making. (Compl. ¶ 19.) HPI is merely one of four sub-components – along with chief complaint, review of systems, and past, family and/or social history – considered within the history component. (*Id.* ¶ 21.) The purpose of HPI is to gather information about "the patient's symptoms, the evolution of the illness, and the present state of the patient's condition." (*Id.* ¶ 23.)

In his Complaint, Relator does not alleged that Defendants ever failed to obtain or document patients' HPI, nor does he contend that the E/M codes used to bill for patient visits were inappropriate. Instead, Relator focuses solely on the credentials of the individual obtaining the HPI. However, none of the allegations in the Complaint indicate that the claim forms required Defendant to identify who performed the HPI. Therefore, Defendants could not have submitted any "factually false" claims regarding the individuals obtaining HPI.

This Court has previously rejected FCA claims premised on a theory of factually falsity where nothing in the claim forms was actually false:

> [N]othing on the claim forms, including the provider number, is "factually" false. Realtors do not contend, for example, that [defendant] knowingly used the acute provider number for patients pre-authorized for residential care in order to receive a higher payment. Nor have Relators presented any other facts indicating that the provider numbers were false on their face. When correctly analyzed, Relators' 'provider number' theory of factual falsity devolves to an implied false certification theory – namely, TRMC submitted false claims because it knowingly failed to comply with the active treatment regulations for each type of patient.

*United States ex rel. Sanchez-Smith v. AHS Tulsa Reg.'l Med. Ctr., LLC*, 754 F. Supp. 2d 1270, 1284-85 (N.D Okla. 2010). As in *Sanchez-Smith*, Relator here has not alleged that anything on the claim forms was false on its face and has not disputed that the services actually occurred.

9

Accordingly, the Court rejects any theory of factual falsity based on unqualified personnel obtaining HPI.

## 2. Legal Falsity/False Certification

### a. Express False Certification

Relator has not plausibly alleged any express certification made by Defendants certifying that they were in compliance with any HPI requirements. In the Complaint, Relator contends that "[f]or each year since at least 2007, Defendants have repeatedly and falsely certified their continued compliance with Medicare guidelines while knowingly rendering services not in compliance with Medicare guidelines and while knowingly submitting false records or statements for payments related to such services rendered." (Compl. ¶ 47.) This is the only paragraph of Relator's Complaint which contains any allegations regarding certification. This single, conclusory allegation by Relator cannot serve as the basis of an express false certification claim. Relator has not indicated how Defendants "certified their continued compliance." He has identified no specific statement made by Defendants or even the title of the form they allegedly submitted. Relator has not even provided enough information to discern whether his claim is based on a condition of participation or a condition of payment.

Relator relies on the *Evaluation and Management Services Guide* ("*Guide*") published by the Department of Health and Human Services, which states that certain components of patient history may be obtained by non-physicians:

> The [Review of Symptoms] and/or [Past, Family and/or Social History] may be recorded by ancillary staff or on a form completed by the patient. To document that the physician reviewed the information, there must be a notation supplementing or confirming the information recorded by others.

(Ex. A to Defs. Brief at 13.) Relator contends "the omission of HPI from the specifically described exceptions makes it clear that the recording of HPI cannot be delegated to ancillary staff." (Resp. at 10 (emphasis in original).) The Court is not persuaded by Relator's argument. This lone provision in the *Guide* – which Relator has not demonstrated has any legally binding effect on healthcare providers – certainly does not make compliance with any provisions regarding the gathering of HPI a prerequisite to payment. Even assuming the *Guide* legally required Defendants to have physicians perform the HPI, Relator's express false certification claim would still fail because the *Guide* does not condition payment on perfect compliance with regulations regarding the HPI. *See United States ex rel. Hobbs v. MedQuest Assoc., Inc.*, 711 F.3d 707, 713 (6th Cir. 2013) ("[B]ecause these regulations are not conditions of payment, they do not mandate the extraordinary remedies of the FCA and are instead addressable by the administrative sanctions available . . . ."). Relator fails to identify any false certification premised upon the requirements of a particular statute, regulation or contract by Defendants. As a result, Relator has not plausibly stated a claim for express certification.

### b. Implied False Certification

Relator has also failed to allege any plausible implied false certification claim. With an implied false certification claim, courts "[focus] on the underlying contracts, statutes, or regulations themselves to ascertain whether they make compliance a prerequisite to the government's payment." *Conner*, 543 F. 3d at 1217. As stated above, Relator has not identified any specific contract, statute, or regulation that made compliance with any provision regarding the gathering of HPI a prerequisite to payment.

In his response to Defendants' Motion to Dismiss, Relator contends Defendants' claims are impliedly false because the medical necessity of an E/M service cannot be established without appropriate documentation in the patient's record. (Resp. at 18 ("Without a physician-recorded HPI in the medical record, the documentation does not have a recorded HPI that can establish the medical necessity for the physician services billed for.").) Relator seems to believe that any HPI performed by a non-physician occurs in a vacuum and that such information is unavailable to the physician. In reality, it seems more likely that the nurse or medical assistant performs the HPI for the physician and provides the results to the physician before he examines the patient.

Relator argues the facts of the present case are similar to those in *United States ex re. Grubbs v. Kanneganti*, 565 F.3d 180 (5th Cir. 2009). However, this argument is not persuasive. The relator in *Grubbs* alleged that physicians billed for face-to-face visits with patients where the patients had actually only been seen by the nurses. Unlike in *Grubbs*, Relator has not alleged that the physicians billed for patient visits that did not occur or even that the E/M codes were incorrect. Instead, Relator has merely alleged that some of the information needed to perform the physician service was obtained by a nurse and not by the physician. Relator apparently contends that payment for E/M services is conditioned on perfect compliance with all requirements. Under such a theory, any error in the medical record documentation would render Defendants' "certification" false and any payments received under such claims fraudulent. However, "'liability [under the FCA] does not arise merely because a false statement is included within a claim, but rather the claim itself must be false or fraudulent.'" *Conner*, 543 F.3d at 1219 (quoting *United States ex rel. A+ Homecare, Inc. v. Medshares Mgm't Group, Inc.*, 400 F.3d 428, 443 (6th Cir. 2005)) (alteration in original).

The Court finds that Relator has not plausibly alleged that payment was conditioned on compliance with any contract, statute, or regulation requiring physicians to obtain HPI, and the Court dismisses Relator's false certification claims.

V. **Rule 9(b)**

Because the Court dismisses Relator's First Amended Complaint pursuant to Rule 12(b)(6), the Court need not consider whether Relator has satisfied the requirements of Rule 9(b).

VI. **Conclusion**

For the foregoing reasons, Defendants' Motion to Dismiss (Doc. 24) is GRANTED.

**SO ORDERED this 5th day of November, 2014.**

_____
TERENCE C. KERN
United States District Judge